UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ALVIN P. REED, ET AL** | * | CIVIL ACTION NO. 14-CV-2598 |
| | * | |
| **VERSUS** | * | JUDGE PATRICA MINALDI |
| | * | |
| **INTERNATIONAL PAPER** | * | |
| **COMPANY, ET Al** | * | MAGISTRATE KATHLEEN KAY |

**PLAINTIFFS' REPLY TO INTERNATIONAL PAPER COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND OPPOSITION TO *SUA SPONTE* SUMMARY DISMISSAL OF THE LDEQ**

Reduced to its essence, IP's opposition to Plaintiff's Motion to Remand raises nothing new. It simply reiterates the erroneous positions taken in its improper Notice of Removal, namely that 1) all LDEQ actions are discretionary (i.e., LDEQ has no non-discretionary duties) and thus immune from suit, and 2) the actions complained of by Plaintiffs with respect to LDEQ cannot, under any circumstance, give rise to a private cause of action under Louisiana law, particularly with respect to LDEQ's failure to warn or its failure to conduct "meaningful inspections."[1]

In other words, according to IP, LDEQ is simply beyond the reach of any judicial forum, let alone Plaintiffs, and operates wholly autonomously in this democracy without any ability of redress or challenge by anyone. Indeed, IP would have the Court believe that LDEQ possesses a complete and unfettered immunity more impenetrable than that provided to any of three *actual* branches of government. Yet, as shown in Plaintiffs' original memorandum, both the state and federal courts of Louisiana disagree with IPs position. Even the LDEQ itself – though served

---

[1] Of the list of non-discretionary duties complained of having been breached by the LDEQ in Plaintiffs' complaint, IP focuses attention principally on these two. However, Plaintiffs neither agree nor imply herein that other duties set forth in the complaint are discretionary simply because the inquiry in brief focuses on the failure to warn and the failure to conduct meaningful inspections.

1

with the suit at the same time as IP – has not appeared in these proceedings to assert the absurd position of IP with respect to its own agency. Nevertheless, Plaintiffs address briefly hereafter the very few points illogically raised by IP in its opposition memorandum.

I.   Plaintiffs Have Sufficiently Alleged Both Non-Discretionary and Cognizable Causes of Action Against the LDEQ to Warrant Remand

The basic – but critical – facts of this case are clear and indisputable:

a.   IP actively operated its pole treatment facility in DeRidder, Louisiana from 1955 until 1997, a period of 42 years, and the site was actually in existence from 1937 to present, a period *of 77 years*.

b.   Since at least 1981, IP knew that its pole treating operations had contaminated the ground waters underlying its facility – a period of *33 years*.

c.   Over the course of the *past 33 years*, the ground water contamination at issue has *migrated* from onsite *to offsite* in both the vertical and horizontal directions, into the Chicot aquifer, and through, on, and underneath Plaintiffs' adjacent properties.

d.   Through all of these years, and as IP states in its brief and as alleged in Plaintiffs' complaint, LDEQ has "overseen" IP's activities at the site.

So, in the course of more than *three decades* of oversight by LDEQ, the contamination has not abated even in the slightest degree, but has instead moved in all directions, migrated beyond the boundaries of the IP facility, contaminated at least the upper sands of the critical Chicot Aquifer and perhaps the lower sands, and shows absolutely no signs of abatement in the foreseeable future. In other words, under LDEQ's "mindful" watch, the contamination plume has grown and worsened. Despite these uncontroverted facts, all of which are alleged in Plaintiffs' petition, IP says in brief to the Court - with a proverbial straight face - that LDEQ's actions are beyond both reproach and review by any court. It is a truly astonishing position, though one without sincerity.

Clearly, LDEQ has by any yardstick been asleep at the helm. It is for this reason that it was named in the litigation and it is for this reason it is a legitimate party defendant. No

reasonable person examining the facts can reach any other conclusion. Of course, IP's attempts to divert the Court's attention away from these admittedly embarrassing facts and instead onto its contention that, even if Plaintiffs are correct, the LDEQ's failures are simply discretionary duties immune from suit under La. Rev. Stat. §9:2798.1.

Unfortunately, and as already described in great detail in Plaintiffs' original memorandum, Louisiana's court's – not Plaintiffs - have concluded otherwise. In fact, they have specifically held when faced with some of the same duties alleged to be breached by LDEQ herein that such duties are mandatory – not discretionary. For example, in Paragraph 44(f) of their complaint, Plaintiffs alleged LDEQ breached its mandatory duty by:[2]

> ***Failing to conduct routine site inspections***, as per its statutory mandate, to ensure that all previously approved ***remediation plans and activities were proceeding and being implemented in a manner consistent with such plans***;

The source of this breached duty is principally enumerated in the Louisiana Environmental Quality Act ("LEQA") sections §30:2011(D), §30:2012(A), and §30:2012(D).

  a. "To ***conduct inspections and investigations and enter facilities*** as provided in R.S. 30:2012." (emphasis added) §30:2011(D)(13).

  b. "The protection of the environment and public health ***requires timely and meaningful*** inspections of facilities subject to the provisions of this Subtitle. ***Inspections of such facilities are essential to assure compliance*** with this Subtitle and the regulations issued pursuant thereto. The purpose of such inspections is to determine whether any of the following conditions exist: 1) ***Environmental standards have been achieved***. 2) ***There is an emergency*** under the provisions of this Subtitle. 3) ***There is a present or potential danger to the health or the environment***. 4) ***A violation*** of the provisions of this Subtitle or rules, regulations, or orders issued pursuant thereto ***has occurred***. 5)

---

[2] In its opposition papers, IP claims that "Plaintiffs' Petition fails to cite authority to support their claims with respect to any *specific* 'statutory mandates.'" The argument lacks merit. Plaintiffs have specifically cited to both the LEQA and to specific codal articles that serve as the source of duties of LDEQ. See ¶43 and ¶45. There is no requirement in either state or federal law that mandates the citation to each and every section of every statute that may serve as a basis for the duty. Plaintiffs have pled, in detailed fashion, the nature of the duties breached by LDEQ and those duties are both statutorily and jurisprudentially based.

3

> Under the provisions of this Subtitle, there is an abandoned waste site." (emphasis added) La. Rev. Stat. §30:2012(A).
>
> c. "***Monitoring inspections*** of facilities operating with a permit issued pursuant to this Subtitle ***shall be conducted to assure compliance*** with this Subtitle and regulations issued pursuant thereto. The secretary ***shall prepare, implement, and revise, as needed, a compliance monitoring strategy designed to achieve meaningful results.*** Inspections shall be both intensive, designed to accomplish meaningful environmental results and routine to ensure a compliance presence in the field." (emphasis added) La. Rev. Stat. §30:2012(D)(1).

With particular respect to inspections, the Louisiana Court of Appeal for the First Circuit specifically found in *Wilson v. Davis*, 2007-1929 (La. App. 1 Cir. 5/28/08), 991 So.2d 1052, that:

> ***DEQ was also <u>required</u> to perform "meaningful inspections" of the facility*** in order to determine whether environmental standards have been achieved" in accord with La. R.S. 30:2012(A)(1). ***<u>DEQ's compliance with La. R.S. 30:2012(A)(1) and 30:2012(D) does not involve policymaking or discretionary duties, and failure to comply with the referenced statutes does not come within the scope of the statutory grant of immunity for such acts. La. R.S. 9:2798.1.</u>*** (emphasis added) *Id.* at 1059-1060.

The allegation by Plaintiffs clearly states LDEQ failed to conduct routine inspections to *ensure* IP's ongoing remediation activities were consistent with the approved cleanup plans, i.e. that the LDEQ failed to perform meaningful inspections. This duty is not, according to *Wilson*, an immune discretionary function of LDEQ as IP suggests and its assertion to the contrary intentionally ignores the statements of the court.

By the statute's unequivocal language, LDEQ has a mandatory function under §30:2012(A) to determine the individual facility's compliance with established regulations, permits, and orders as well as potential violations thereof. Additionally, and according to §30:2012(D), "[i]nspections ***shall*** be both ***intensive, designed to <u>accomplish meaningful environmental results</u> and <u>routine to ensure a compliance presence in the field</u>***." (emphasis added). Plaintiffs have specifically alleged LDEQ did not conduct these mandatory

4

non-discretionary inspections in a manner designed to yield meaningful results. Therefore, they have stated a cause of action against LDEQ which is not immune under §9:2798.1.

Of course, IP attempts to buttress its ill founded argument by simply stating in wholly conclusory fashion that LDEQ has conducted "meaningful" inspections. Yet, in support of this contention, IP provides absolutely nothing to prove that inspections conducted at the facility were meaningful. It is true that the listing of documents shown in IP's Exhibit A purports to reflect documents contained in the LDEQ files which reference the performance of some relatively few and sporadic inspections at the facility over the course of the past 46 years. (IP Exhibit A).[3]

However, this document reveals nothing whatsoever as to the substantive purpose of the inspections, the activities performed during the inspections, the results/findings of the inspections, the persons involved in the inspections, the facilities and/or equipment observed during the inspections, the duration of the inspections, or any other similar information relevant to assessing whether the inspections were, in fact, <u>meaningful</u>.

That is, IP simply equates the alleged performance of an inspection by the LDEQ to the fact that such inspection is meaningful. The two are not, however, synonymous. Whether or not an inspection was meaningful requires an in depth *factual* analysis that is well beyond the inquiry permitted on this motion to remand. As such, the listing of documents shown by IP in Exhibit A is of no use whatsoever. Indeed, the mere fact that the Court would be required to conduct such a <u>factual</u> inquiry in order to determine whether Plaintiffs possess a reasonable possibility of recovery

---

[3]Plaintiffs object to IP's attachment of documents included as Exhibit A-D as none of these documents are verified and are clearly inadmissible hearsay and not competent summary judgment evidence. Moreover, IP's reliance on the documents for the purpose of arguing their substance, which is not revealed in any respect therein on their face, is a matter that requires further discovery. If the Court intends to utilize these documents as substantive support for its denial of Plaintiffs' motion, Plaintiffs request that they be allowed to conduct discovery so that the substance of IPs contentions can be adequately challenged. However, Plaintiffs urge that any substantive reliance by the Court on these documents on this limited 12(b)(6)-like inquiry would be improper.

against LDEQ for its failure to conduct meaningful inspections militates against any dismissal of the LDEQ and strongly suggests that remand is the only appropriate course of action.

It is interesting to note, however, that of the approximately 67 inspections listed on IP's Exhibit A during the past 46 years of records, only 38 inspections even portend to touch upon the environmental media at issue in this case – ground water. The others appear to be completely unrelated to any issue in the case (air, surface water, asbestos, and hazardous waste).

Nevertheless, IP attempts to swoon the Court into believing the LDEQ conducted frequent and meaningful inspections of ground water. It did not. In fact, examination of the document reveals that, despite IP's acknowledgement in brief the LEQA <u>required annual inspections</u> prior to its amendment in 2003, LDEQ failed miserably to abide by this requirement, only conducting 4 ground water inspections (2 in 1982, 1 in 1983, and 1 in 1988) in the 22 year period between 1968 and 1990. Yet, it is in these years when IP first discovered the ground water contamination, reported it to the LDEQ, and was formulating its field response to address the contaminant plume. It is difficult, if not impossible, to imagine how IP and LDEQ can seriously argue that LDEQ was conducting meaningful inspections when it was conducting no inspections at all for years at a time. If anything, these failures support Plaintiffs' position that LDEQ breached its duty to meaningfully inspect and is further evidence of the propriety of the agency's joinder in the complaint.

IP's argument with respect to the LDEQ's failure to warn is equally specious. Here, IP contends there is no cause of action in tort because LDEQ has no statutory duty to warn anyone of any danger or threat caused by IP's contamination. Again, Plaintiffs and the court's disagree. LDEQ's duty to warn is linked, in part, to its clearly established duty to conduct meaningful inspections. For example, under §30:2012(A) of the LEQA, the LDEQ is mandated to conduct

6

inspections for the purpose of determining whether "there is a present or potential danger to the health or the environment." In the event the LDEQ discovered a danger to human health or the environment, it must act on such information. That is, it cannot simply silence the information it possesses. It must respond and one of those responses is to warn third persons who may be adversely affected by the danger discovered. To do otherwise is simply unreasonable by any standard.

It is for this reason that the Court of Appeal for the First Circuit, stated the following in *Robichaux v. State of Louisiana, et al*, 2006-0437 (La. App. 1 Cir. 12/28/06); 952 So.2d 27, 36-37:

> ***Plaintiffs also allege that <u>negligence</u> on the part of the State Defendants <u>worsened the contamination through inaction</u> and exposed Plaintiffs to risk of harm through the agencies' <u>failure for several years to warn or notify</u> property owners of the contamination. Plaintiffs cause of action arises under <u>tort principles</u>*** and not Louisiana Revised Statutes 30:2015.1, which Plaintiffs use here in a procedural capacity to comply with proper procedures for seeking remediation. ***The statute's language allows them to do so without a specific claim for individually compensable damages***.

Like the situation before the *Robichaux* court, the instant action against the LDEQ arises from years of inaction by LDEQ and LDEQ's failure to warn of the ever migrating contamination. The cause of action is founded in Louisiana's tort law and rooted in the Civil Code. *Robichaux* is virtually indistinguishable from the instant matter and Plaintiffs' herein are equally able to avail themselves of the same theories of recovery – as they have alleged in their complaint.

Federal courts have also recognized that LDEQ's failure to warn is a cognizable cause of action. In the illustrative decision of *Gaspard One, L.L.C., et al, v. BP America Production Co., et al*, 2008 WL 4279631 (W.D. La. 9/17/08), the court allowed plaintiffs to amend their complaint to add similar allegations against the LDEQ even though such allegations would defeat diversity jurisdiction:

7

> *…it appears that as a matter of law*, the plaintiffs are not without an arguable claim against the state agency defendants for failure to warn of the alleged property contamination under Louisiana law…[citing *Robichaux*, supra]…and in the absence of argument on the part of defendants that the claims, *as a matter of law*, can *not* be valid, under the facts at issue, this Court cannot find the claims to be futile or, under applicable law, unavailable *as a matter of law*.

As before, IP submits documents included as Exhibits C and D which purport to stand for the proposition that LDEQ, together with IP, warned at least some of the plaintiffs about the existing ground water plume underlying their properties. Unfortunately for IP, these present conflicting accounts of what communication actually occurred with respect to these particular Plaintiffs. In fact, the documents seem to indicate that ***plaintiffs were not told anything but were instead interviewed to <u>obtain</u> – not impart – information.*** In its January 18, 2002 correspondence to the LDEQ describing its communication with some (but not all) neighbors in the vicinity of the site, IP stated:

> As specified in the May 31, 2001 Work Plan Addendum, International Paper conducted a ***door-to-door water well survey to identify any potential unregistered wells*** within the boundary of the plume. The survey was conducted on December 31, 2001 accompanied by Jim Courcier of the LDEQ. There were thirteen residences within the area. Three of the houses were unoccupied. Residents of the ten occupied houses were personally contacted ***and interviewed***, and ***no wells were identified***. (emphasis added)(1/18/02 ltr from IP, IP Exhibit C).

Nowhere in this letter does IP state that either it or the LDEQ told residents anything pertaining to contamination of their lands. Nowhere in this letter does IP state exactly what information – if any – was provided to the residents regarding ground water contamination. In fact, IP states in the letter that "..the extent of constituents has not been completely defined by the existing data." (p.2 of Exhibit D). Yet, we are to believe that residents were somehow told their properties were contaminated even though IP itself had no idea what the extent of the contaminant plume was at the time. IPs argument is nonsensical. Regardless, the only thing that is clear from the

8

document is that IP and LDEQ apparently <u>obtained</u> information <u>from</u> residents regarding their water wells. To conclude anything else reads into the document more than it actually contains.

Even in the Field Interview Form completed by inspector Courcier, there is no indication that residents were actually informed that their properties were contaminated. On the contrary, Courcier states, the "purpose of the visit was to notify all surrounding residents affected ***by*** potential contamination northwest of SWMU-E." (emphasis added) (IP Exhibit D). Again, nothing in this form shows that residents were told that their property was contaminated or, for that matter, that they were told anything about the contamination. It merely says "***all*** surrounding residents affected ***by***" were spoken to. Again, the document does not contain any information proving the conclusions reached by IP with respect thereto.

Finally, and by IP's own admission, only 4 of the 13 named Plaintiffs even appear to have received any communication whatsoever. Even it could be construed that LDEQ warned these four Plaintiffs (which Plaintiffs deny), IP has obviously been unable to uncover any document indicating that the remaining Plaintiffs were ever warned either by IP or by LDEQ. Otherwise, IP surely would have submitted those documents herewith.

In the end, however, these documents are of no moment and IP's reliance on these documents is severely misplaced because they raise more questions than answers. The Court cannot – without conducting a complete factual investigation into these issues – conclude that LDEQ carried out its duty to warn Plaintiffs of the ground water contamination of their Beauregard Parish lands. IP has failed to bear its heavy burden of establishing that Plaintiffs have no reasonable possibility of recovery against LDEQ under Louisiana law for its failure to warn.

II.      <u>Plaintiffs Claims are Not Collateral Attacks on LDEQ Administrative Decisions</u>

In its last effort to support the propriety of its removal, IP contends that Plaintiffs suit against LDEQ is an impermissible collateral attack on the orders of LDEQ for matters of public concern. The argument is once again unfounded. Plaintiffs clearly have a right to bring suit against any person who has caused them *private* damage. *See* La. Civ. Code art. 2315, et seq. LDEQ is no different in this respect from IP. While it may be true that LDEQ can avoid liability for discretionary acts under §9:2798.1, it cannot do so for its non-discretionary acts - as shown above. It is these non-discretionary acts of which Plaintiffs complain and are a matter of private – not public – law.

*Conclusion*

In conclusion, and despite IP's contentions to the contrary, LDEQ has numerous non-discretionary duties that are not immune under §9:2798.1. Plaintiffs have alleged that LDEQ breached these duties and has alleged sufficient facts to predict a reasonable possibility of recovery against the LDEQ under Louisiana law for these breaches including, but not limited to, its failure to conduct routine and meaningful inspections and its failure to warn Plaintiffs of the contamination underlying their properties. Nothing in the documents submitted by IP refutes these allegations. On the contrary, the documents actually emphasize LDEQ's failures with respect to it non-discretionary duties. Therefore, Plaintiffs pray their Motion to Remand be granted, IP's request for *sua sponte* dismissal of LDEQ be denied, and for attorneys fees and costs awarded.

Respectfully submitted,

/s Jay Bice

_____

**JERE JAY BICE**
Bar No. 18793
VERON, BICE, PALERMO & WILSON, L.L.C.
721 Kirby St., 70601
P.O. Box 2125
Lake Charles, LA 70602-2125
Telephone: (337)310-1600
Facsimile: (337) 310-1601

**KENNETH JAY DELOUCHE,**
Bar No. 28550
THE DELOUCHE LAW FIRM, L.L.C.
703 E. Fourth Street
DeQuincy, LA 70633
Telephone: (337) 786-2737
Facsimile: (337) 786-3085

**CHARLES A. "SAM" JONES, III**
105 N. Stewart Street
P.O. Box 995
DeRidder, La. 70634-0995
Telephone: (337) 463-5532
Bar No. 14404

*Attorneys for Plaintiffs*

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ALVIN P. REED, ET AL** | * | **CIVIL ACTION NO. 14-CV-2598** |
| | * | |
| **VERSUS** | * | **JUDGE PATRICIA MINALDI** |
| | * | |
| **INTERNATIONAL PAPER** | * | |
| **COMPANY, ET Al** | * | **MAGISTRATE KATHLEEN KAY** |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and forgoing Plaintiffs Alvin P. Reed, et al's Reply to International Paper Company's Opposition to Plaintiffs' Motion to Remand and Opposition to *Sua Sponte* Summary Dismissal of the State of Louisiana, through the Louisiana Department of Environmental Quality was filed electronically with the Clerk of Court using the CM/ECF system and a copy was sent via United States Mail, postage prepaid and properly addressed, to counsel for the defendants, who is:

Michael A. Chernokoff
JONES WALKER, L.L.P.
First City Tower
1001 Fannin Street, Suite 2450
Houston, Texas 77002
Telephone: (713) 437-1827
Facsimile: (713) 437-1810

Lauren C. Mastio
Heather L. Kirk
JONES WALKER, L.L.P.
201 St. Charles Ave., 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8518
Facsimile: (504) 589-8518

This 23th day of October, 2014, Lake Charles, Louisiana.

/s Jay Bice
_____
**JERE JAY BICE**

12